Settle findings on two days' notice.

---

PEOPLE ex rel. DUTTON v. MAXWELL, CITY SUPERINTENDENT OF SCHOOLS, et al.

(Supreme Court, Appellate Division, First Department. April 22, 1910.)

1. MANDAMUS (§ 79*)—GROUNDS—RIGHT TO RELIEF.
   A by-law of the board of education of New York classified elementary schools into different orders, the fourth order comprising schools having from 6 to 11 classes, and at the same time adopted a by-law providing that the principals of schools of less than 12 but not less than 5 classes should be paid the minimum salary for men of $2,100 and a maximum of $2,400. Subsequently an amendment provided that teachers in charge of schools of the fourth order should be paid the same salary as specified under the former by-law. Relator was the head teacher in charge of a school having 6 classes, which was grouped with a number of others with another person as principal. *Held*, that the classification of a school as of the fourth order so obviously refers to an independent school that relator would not be entitled to mandamus directing the superintendent of schools to certify him, and the board of education to rate and pay him as a teacher in charge of a school of the fourth order; the writ lying only when relator is clearly entitled to the relief sought.
   [Ed. Note.—For other cases, see Mandamus, Dec. Dig. § 79.*]

2. JUDGMENT (§ 552*)—DENIAL OF WRIT—EFFECT OF RELATOR'S RIGHT TO OTHER RELIEF.
   The refusal of mandamus in no way prejudices relator's right to seek his proper remedy by an action at law.
   [Ed. Note.—For other cases, see Judgment, Dec. Dig. § 552.*]

Appeal from Special Term, New York County.

Mandamus by the People, on the relation of George R. Dutton, against William H. Maxwell, City Superintendent of Schools of the City of New York, and others. From a judgment and order quashing an alternative writ, relator appeals. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, and McLAUGHLIN, JJ.

John E. O'Brien, for appellant.
Charles McIntyre, for respondents.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

McLAUGHLIN, J.   In 1898 the relator, holding a diploma from a normal school authorizing him to teach in any of the public schools of the state, was appointed by the board of education of the borough of Queens, city of New York, as a regular teacher in public school No. 60.   The next year he was transferred to public school No. 65, and in April, 1901, again transferred to public school No. 64 as teacher in charge.   The status of the latter school is directly involved in this proceeding and was not satisfactorily shown upon the trial.   The relator testified at some length as to his duties, and it is quite evident that he was the head teacher in charge of the building.   He admitted, however, that the school was grouped with a number of others, including Nos. 60 and 65, in which he had previously taught, under the principalship of one Chase.   At the time he was transferred to No. 64, there were four classes in the school, and a by-law of the board of education then in force provided that:

"In schools of less than five classes the teacher of the highest grade shall receive, in addition to the regular salary of a teacher, $100 per annum as compensation for acting as senior teacher in charge of the school."

There was also in force a by-law of the school board of the borough of Queens which created "a grade or rank known as senior teachers in charge of schools who shall have supervision of such schools as contain six classes or less.   Such teachers shall be required to hold a teacher's license No. 2 or grade A. * * *"   It is by no means certain that the relator's position and duties in school No. 64 did not entitle him to the additional compensation of $100 per year regardless of the latter by-law; but he apparently did not think so because he did not claim such additional salary until December, 1901, when he made application to be appointed senior teacher in charge, stating in his application that he had taken the examination for the license required.   His application was granted in January, 1902, conditionally upon his obtaining the No. 2 or grade A. license, which he did the same month. . Since that time he has received the additional compensation of $100 per annum, and there has been no change in his position or duties.

In March, 1902, the board of education adopted a by-law providing generally for the organization and grading of elementary schools. This by-law provided:

" *   *   * (2) For purposes of organization and supervision elementary schools shall be divided into the following orders: *   *   * Fourth order: Schools having from six to eleven classes.   Fifth order:   Schools having less than six classes. * * * (4) All schools of the first, second and third orders shall be placed under the administration of a principal. * * *"

At the same time another by-law was adopted providing that principals of schools of less than twelve, but not less than five, classes, heads of departments, and assistant principals should be paid in accordance with a schedule therein set forth, designated Schedule 2, the minimum annual salary for men being $2,100 and the maximum $2,400, and in schools of less than five classes the teacher of the highest grade should receive an additional compensation of $100 per annum for acting as senior teacher in charge of the school, this latter provision being the same as the by-law already quoted, in force at the

time. The record is defective in that it does not show the relation between these by-laws and also between them and the amendments subsequently adopted. It would seem, however, that the last by-law was not consistent with the general scheme of classification adopted at the same time. It fixed the salaries of principals of schools having five to twelve classes, despite the fact that the general classification had provided for the appointment of principals over schools of the first three orders only; that is, schools having more than twelve classes. It also apparently ignored the classification of schools into orders. One of the inconsistencies, however, was remedied in May, 1903, by an amendment providing that:

"In schools of the fifth order the teacher acting as senior teacher in charge of the school shall receive, in addition to the regular salary, $100 per annum."

The by-laws respecting schools of the fifth order were thereby harmonized, but no change was made in regard to schools of the fourth order; the by-law as to them remaining as before.

In September, 1903, a fifth class was organized in school No. 64, and in October, 1904, a sixth class was added. According to the relator's contention, this school thereupon became a school of the fourth order, and the provision for extra compensation for the teacher in charge of a school of the fifth order no longer applied. Notwithstanding his present contention, he still, however, continued to perform the same duties and receive the additional $100 as theretofore. He made no claim to be paid the salary fixed in Schedule 2 for the principal of a school of six classes, and it would seem he was not entitled to the same, since he was not the principal of the school, but simply the senior teacher in charge of the building under a principal.

In January, 1905, the by-law providing for the general scheme of organization was amended by providing that:

"(5) Each school of the fourth order (unless grouped * * *) shall be placed in charge of a teacher with the rank of assistant to principal. * * * Such teacher shall hold an assistant to principal (head of department) or a higher license. * * *"

The preceding subdivision (4) has already been quoted, and provided for the appointment of principals over schools of the first three orders, and this amendment was evidently intended to make a corresponding provision for supervision of schools of the fourth order. In December, 1905, another amendment was adopted, which provided that:

"Teachers in charge of schools of the fourth order * * * and assistants to principals (heads of departments) shall be paid in accordance with the following schedule"—which was designated Schedule 2 and fixed the same maximum and minimum salaries that had been specified in Schedule 2 of the by-law passed in 1902.

Whether this amendment in 1905 was intended to take the place of the previous by-law it is impossible to tell from the record; but it would seem that it was intended to supersede it. As a result of these amendments, the administration of schools of the fourth order

was provided for pursuant to the general scheme adopted in 1902, and the inconsistencies referred to were eliminated.

In March, 1905, the relator asserted his right to be paid in accordance with Schedule 2 as a teacher in charge of a school of the fourth order, and in September, 1907, he commenced this proceeding to obtain a peremptory writ of mandamus directing the respondent Maxwell, as superintendent of schools of the city of New York, to certify him and the board of education to rate and pay him as such a teacher for the year commencing September 1, 1907. It is conceded, if Schedule 2 applied to him at all, he was entitled to the maximum salary of $2,400—some $300 more than he was receiving. An alternative writ was obtained, and the issues raised by the petition and return thereto were tried, by consent, at Special Term, resulting in a judgment and order quashing the writ, from which the relator appeals.

I am of the opinion the judgment appealed from should be affirmed. The relator failed to establish a clear legal right to the relief demanded. As already said, the record is defective in many respects, and the only inference which is fairly deducible from the established facts is that by the amendments in 1905 the board of education was following out the scheme of organization adopted in 1902. No provision had been made at that time for the appointment of heads of schools of the fourth order. There were, however, principals of schools which were schools of the fourth order under the classification adopted who were ranked and paid the same salary as assistants to principals, and heads of departments according to Schedule 2. The effect of the amendment in 1905 was to change the designation in accordance with the classification adopted by providing for the appointment of teachers in charge of schools of the fourth order who were required to hold an assistant to principal license and who continued to be ranked and paid under Schedule 2 with assistants and heads of departments. Under this system such teachers in charge were of the same rank and had the same duties as the former principals of such schools.

If this is the correct interpretation of the amendments, then it would seem to follow that the relator was never a teacher in charge within their meaning. He never obtained the requisite license, and the school has always been under the principalship of another person. It is at least so doubtful whether school No. 64 is a school of the fourth order, within the classification adopted, which obviously refers to an independent school, that the court was justified in refusing to issue the writ. A writ of mandamus will only issue when the party seeking the benefit of it is clearly entitled to the relief sought, and that cannot be said from this record. If the relator is entitled to the salary claimed by him, his proper remedy is by an action at law, and the refusal of the writ in no way prejudices his right to maintain such action. Steinson v. Board of Education, 165 N. Y. 431, 59 N. E. 300; Moore v. Board of Education, 121 App. Div. 862, 106 N. Y. Supp. 983, affirmed on opinion below, 195 N. Y. 614, 89 N. E. 1105.

The judgment and order appealed from, therefore, should be affirmed, with costs.

CLARKE, J., concurs.

INGRAHAM, P. J.   I concur with Mr. Justice McLAUGHLIN, on the ground that mandamus is not the proper remedy.   The relator has an action at law to recover any salary due him, where the questions can be much more satisfactorily disposed of than on an application for a mandamus, and no certificate of the superintendent is necessary to enable him to maintain such an action.

SCOTT, J., concurs.